**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CAROL HOUP AND KAREN RUSHING** § § § | **CIVIL ACTION NO:** |
| *Plaintiff*s § § | |
| v. § § | |
| **JAYCO, INC.** § § | |
| *Defendant* § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I.   Parties

1.   Plaintiff, **CAROL HOUP**, now and has been at all times material hereto a resident and citizen of the State of Texas.

2.   Plaintiff, **KAREN RUSHING**, now and has been at all times material hereto a resident and citizen of the State of Texas.

3.   Defendant, **JAYCO, INC.**, hereinafter "JAYCO," is a foreign corporation whose principal place of business is in the State of Indiana and whose agent for service of process is Wilbur Bontrager, 903 S. Main Street, Middlebury, IN, 46540.

### II.   Jurisdiction

4.   This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs, CAROL HOUP and KAREN RUSHING, and Defendant, JAYCO, INC., are citizens of different states and the amount in controversy exceeds $150,000.00, excluding interest and costs. The total cost of the subject vehicle to the Plaintiffs including finance charges to date, out of pocket

expenses, lost wages, loss of use damages, non-pecuniary damages, and attorney fees will be over $150,000.00.

This court also has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs' state law claims because said claims are so related to the claims within the Court's original jurisdiction that he form part of the same case or controversy under Article 3 of the United States Constitution.

### III.   Venue

5. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV.   Conditions Precedent

6. All conditions precedents have been performed or have occurred.

### V.   Facts

#### A.   The Transaction

7. On September 8, 2015, Plaintiffs purchased a new 2016 JAYCO SEISMIC 4112 VIN 1UJCJSCV1G19H0064, hereinafter "JAYCO SEISMIC," from Lonestar RV. The JAYCO SEISMIC was purchased primarily for Plaintiffs personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

8. The sales price of the JAYCO SEISMIC was $79,900.00, excluding finance charges. Plaintiffs made a down payment in the amount of $22,000.00. The total cost of the vehicle to Plaintiffs including finance charges will be over $150,000.00.

### B. Implied Warranties

9. As a result of the sale of the JAYCO SEISMIC by Defendant to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the JAYCO SEISMIC would pass without objection in the trade under the contract description; and that the JAYCO SEISMIC was fit for the ordinary purpose for which such motor vehicles are purchased.

10. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

11. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the JAYCO SEISMIC occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the JAYCO SEISMIC had, in fact, repaired the defects.

12. Plaintiffs's purchase of the JAYCO SEISMIC was accompanied by express warranties offered by Defendant, JAYCO, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the JAYCO SEISMIC.

13. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the JAYCO's warranty booklet and owners manual.

### D. Actionable Conduct

14. In fact, when delivered, the JAYCO SEISMIC was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to: **WATER LEAKS; SLIDEOUT DEFECTS; AND ELECTRICAL DEFECTS. THE RV HAS BEEN OUT OF SERVICE OVER 100 DAYS AND IS STILL DEFECTIVE.**

15. Since purchase, Plaintiffs have returned their JAYCO SEISMIC to Defendant and authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendant were given the opportunity to repair the JAYCO SEISMIC, the more significant and dangerous conditions were not repaired. Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the JAYCO SEISMIC continues to this day to exhibit some or all of the non-conformities described herein.

16. The defects experienced by Plaintiffs with the JAYCO SEISMIC substantially impaired its use, value and safety.

17. Plaintiffs directly notified the Defendant of the defective conditions of the JAYCO SEISMIC on numerous occasions. Plaintiffs notified Defendant that he wanted a rescission of the sale of the JAYCO SEISMIC but Defendant has failed and refused to buy back Plaintiffs's defective JAYCO SEISMIC.

18. Since purchase, Plaintiffs have returned their JAYCO SEISMIC to Defendant and authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendant was given the opportunity to repair the JAYCO SEISMIC, the more

significant and dangerous conditions were not repaired. Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the JAYCO SEISMIC continues to this day to exhibit some or all of the non-conformities described herein.

19. The defects experienced by Plaintiffs with the JAYCO SEISMIC substantially impaired its use, value and safety.

### VI.  Causes of Action

**COUNT 1: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

20. Plaintiffs re-alleges and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

21. Plaintiffs are the "consumer" as defined in the DTPA.

22. Defendant violated the following provisions of the DTPA:

   a. §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

   b. §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

   c. §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987);

   d. §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce

     Code;

  e.  §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

23. Because of the inherent defects in the JAYCO SEISMIC, which defects existed at the time the automobile was sold although not discovered until later, the automobile was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such automobiles are used. Furthermore, Defendant, JAYCO, failed to perform the repair work in a good and workmanlike manner. This conduct by Defendant, JAYCO, constitutes a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

24. When the JAYCO SEISMIC was not repaired, the express warranties that it would be and had been repaired were breached. Defendant, JAYCO's breach of the express warranties is actionable under DTPA § 17.50(a)(2).

25. Defendant's, JAYCO, statements that the JAYCO SEISMIC's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendant's services. For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

26. The Defendant acts or practices in the selling and/or repairing of the JAYCO SEISMIC to Plaintiffs were unconscionable actions or courses of action because they tool advantage of the Plaintiffs's lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair degree. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

27. Plaintiffs further contends that Defendant's violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiffs to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

28. This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

29. The limited remedy in Defendant's warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendant or its authorized dealerships did not correct the defects within a reasonable time. Tex. Bus. and Com. Code § 2.719. Therefore, any purported limitation of remedies is ineffective.

30. The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

31. This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

32. As a direct and proximate result of Defendant's willful violation of their obligations under the DTPA, Plaintiffs have suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the JAYCO SEISMIC, damages associated with the inconvenience suffered as a result of the complete failure of the JAYCO SEISMIC to operate properly, the loss of use of the JAYCO SEISMIC during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, and attorneys' fees. Plaintiffs have incurred and will continue to incur in order to protect their rights in this matter. The precise amount of damages is unknown at the present time but is estimated to be in excess of $150,000.00

and will be shown according to proof at trial.  Attorneys' fees, loss of use, interest, and other damages continue to accrue.

33.     Under the DTPA, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails.  As a proximate result of Defendant's misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

34.     Plaintiffss re-alleges and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

35.     Plaintiffs are the "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

36.     Defendant JAYCO is the "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

37.     The JAYCO SEISMIC hereinabove described is the "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

38.     The express warranties more fully described hereinabove pertaining to the JAYCO SEISMIC is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

39.     The actions of Defendant and each of them as hereinabove described, in failing to tender the JAYCO SEISMIC to Plaintiffs free of defects and refusing to repair or replace the

defective JAYCO SEISMIC tendered to Plaintiffs constitute a breach of the written and implied warranties covering the JAYCO SEISMIC and hence a violation of the Magnuson-Moss Warranty Act.

40. Plaintiffs have has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendant as herein alleged.

41. As a direct and proximate result of the acts and omissions of Defendant, Plaintiffs have been damaged hereinabove in an amount in excess of $150,000.00 according to proof at trial.

42. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 3: BREACH OF EXPRESS WARRANTIES**

43. Plaintiffs re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

44. Th Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs's JAYCO SEISMIC or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant issued an expressed written warranty which covered the JAYCO SEISMIC and warranted

that the JAYCO SEISMIC was free of defects in materials and work quality at the time of delivery.

45. As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiffs, an JAYCO SEISMIC that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

46. In breach of the foregoing warranties, the Defendant have failed to correct said defects.

47. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 4: BREACH OF IMPLIED WARRANTIES

48. Plaintiffs re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

49. The Defendant impliedly warranted that Plaintiffs JAYCO SEISMIC, which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

50. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the JAYCO SEISMIC had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiffs.

51. Because of the defects, Plaintiffs's JAYCO SEISMIC is unsafe and unfit for use and

has caused economic loss to the Plaintiffs. Therefore, the Defendant breached the implied warranty of merchantability.

52. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5: NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

53. The Defendant had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

54. The Defendant breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

 a. Failure to design and manufacture a JAYCO SEISMIC that did not harbor the defects alleged herein;

 b. Failure to notify Plaintiffs of the dangerous and defective condition of the JAYCO SEISMIC when Defendant knew or should have known of the dangerous and defective condition;

 c. Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

 d. Failure to repair the JAYCO SEISMIC in accordance with the express and implied warranties.

55. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages;

loss of use; damages; and attorney fees.

### COUNT 6: BREACH OF CONTRACT

56. Plaintiffs re-alleges and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

57. Plaintiffs would show that the actions and/or omissions of Defendant described herein above constitute breach of contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

58. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 7: NEGLIGENT REPAIR

59. Plaintiffs re-alleges and incorporate herein by reference each and every allegation set forth in the preceding paragraphs. For purposes of this cause of action, the word "Defendant" refers to JAYCO.

60. On numerous occasions, Plaintiffs delivered the JAYCO SEISMIC to JAYCO for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

61. On each occasion that Plaintiffs returned the JAYCO SEISMIC for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendant, JAYCO, attempted repairs of the JAYCO SEISMIC pursuant to their obligations under the express and implied warranties. Defendant owed a duty of care to Plaintiffs to perform repairs on the JAYCO SEISMIC in a good and

workmanlike manner within a reasonable time. These Defendant breached this duty.

62. Defendant's attempted repairs of Plaintiffs JAYCO SEISMIC were done so negligently, carelessly, and recklessly as to substantially impair the JAYCO SEISMIC's use, value, and safety in its operation and use. At no repair attempt was Plaintiffs's JAYCO SEISMIC fully and completely repaired by Defendant, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendant's attempts at repair. Nonetheless, each time Plaintiffs picked up the vehicle after Defendant's repair attempts, Defendant represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

63. As a direct and proximate result of Defendant's negligent failure to repair the JAYCO SEISMIC within a reasonable time or within a reasonable number of attempts, Plaintiffs were was forced to drive a defective and dangerous JAYCO SEISMIC in conducting their daily activities. As a further direct and proximate result of Defendant's failure to repair the JAYCO SEISMIC in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the JAYCO SEISMIC in for further repair attempts and to leave the JAYCO SEISMIC for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

64. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs' health and well-being in the form of emotional distress.

### VII. Economic and Actual Damages

65. Plaintiffs sustained the following economic and actual damages as a result of the

actions and/or omissions of Defendant described herein above:

      a..    Out-of-pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

      b.    Loss of use;

      c.    Loss of the "benefit of the bargain";

      d.    Diminished or reduced market value; and

      e.    Costs of repairs.

### VIII.   Damages for Mental Anguish

66. Plaintiffs would further show false, misleading and deceptive acts, practices and/or omissions described herein above were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

67. As a result of such acts, practices and /or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiffs hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

### IX.   Multiple Damages

68. The Defendant's conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

69. Plaintiffs further shows that such acts, practices, and/or omissions were committed

"intentionally" in that Defendant specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

70.     Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

## X.  Request for Rescission

71.     Plaintiffs seeks a damages remedy as an alternative to the remedy of rescission which is requested in the following paragraph.

72.     Plaintiffs revokes their acceptance of the JAYCO SEISMIC for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs reasonable reliance on the false representations and warranties of Defendant that the defects in the JAYCO SEISMIC would be repaired. Accordingly, Plaintiffs seek a cancellation of the automobile purchase transaction and an order of the court restoring to them the money obtained by Defendant as a result of the false representations and breaches of warranty set forth above. Plaintiffs also seeks cancellation of the debt and now offers to return the automobile to Defendant. In this connection, Plaintiffs will provide Defendant a credit for the impaired use of the JAYCO SEISMIC, for the time that Plaintiffs were able to use it.

## XI.  Attorney Fees and Costs

73.     Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the

legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XII.  Prayer

74. For these reasons, Plaintiffs prays for judgment against the Defendant for the following:

    a. For general, special and actual damages according to proof at trial;

    b. Rescinding the sale of the 2016 JAYCO SEISMIC 4112 VIN 1UJCJSCV1G19H0064and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c. For incidental and consequential damages according to proof at trial;

    d. Out-of-pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e. Any diminution in value of the JAYCO SEISMIC attributable to the defects;

    f. Past and future economic losses;

    g. Prejudgment and post-judgment interest;

    h. Damages for loss of use of vehicle;

    I. Civil Penalties and/or Punitive damages;

    j. Damages for mental anguish;

    k. Attorney fees;

    l. Costs of suit, expert fees and litigation expenses; and

    m All other relief this Honorable Court deems appropriate.

## XIII.  Demand for Jury Trial

75. Plaintiffs hereby demands trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
1343 West Causeway Approach
Mandeville, Louisiana 70471
E-mail: rickcdalton@outlook.com
Tel. (985) 778-2215
Fax: (985) 778-2233

ATTORNEY FOR PLAINTIFFS